Thank you, Your Honors. May it please the Court. The technologies collectively known as health information technology, health IT, share a common attribute. They enable the secure collection and exchange of vast amounts of health data about individuals. The collection and movement of this data will power the health care of the future. Health IT has the potential to empower individuals and increase transparency, to enhance the ability to study care delivery and payment systems, and ultimately achieve improvements in care, efficiency, and health care population. That's the first words that the National Coordinator for Health Information Technology wrote in the 2011 to 2015 Federal Health IT Strategic Plan in the record at However, these technologies are remarkably underutilized today. And the very end of that second paragraph was . . . Can you just sum up for me what the argument is that you have for federal officer jurisdiction here? The argument we have, Your Honor, is based on the . . . One, two, three. What supports the argument of federal officer jurisdiction? The federal government really wanted individuals to be able to access their health care information online is point one. That is, in the next sentence, the end of that second paragraph was, while many consumers access their banking information online daily, only 7% have used the web to access their health information. And so the point number one is the federal government really wanted individuals to be able to click a link, to be able to access their health care information online. And we all now have that ability. Thirteen years later, here we stand, and patient portals are the norm. We can access our health care information online at the click of a button. Point two, Your Honor, is paragraph 85 of the complaint in paragraph 194 I and J of the petition, which are in the record at ROA 44 is paragraph 85, and ROA 71 is paragraph 194 I and J. And point two is that is a violation of the Louisiana Electronic Surveillance Act, Louisiana Wiretap Act. Every time a patient or an individual or their caretaker clicks on that link, that is the theory of plaintiff's petition, is that clicking on that link to access your patient portal, to log into the patient portal, is the content of a violation of a Louisiana Wiretap Act violation. And so that's not an issue here, though. Well, y'all are saying . . . . . . under this federal office of jurisdiction, and what I would like to know is how you're acting under the federal jurisdiction, under federal jurisdiction or federal law. What compels you to make and disseminate these records? The . . . under the . . . I think it's two separate things, Your Honor. The compelling of having the portal or the direction of having the portal comes from the regulations. It does come from the regulations. And the regulations, the meaningful use regulations say, okay, here's what you . . . here's the . . . we're going to . . . the federal government is going to certify the technology. The federal government is then . . . that you can use. The federal government is then going to direct how you have to use that direct technology. And one of the things is view online, download, and transmit. That's 42 CFR 49520. And then third, the federal government is going to say, you have to report on that. And that's what you have to do to get paid. Now . . . That's it, is I would say. There is no . . . as I understand it, there is no regulation in the law that compels you to do what you are doing. But they do have the indirect effect of minimizing your payment if you don't do it. I think that's right, Judge Jolly. I think . . . The question here seems to me, at least in part, is whether they are coercing you into the acts that you are complaining, whether you are acting under the federal jurisdiction, under the federal office. It depends upon whether . . . because he has not directed you to do this. Well, and . . . But he has said, if you don't do it, you're not going to get paid. Correct. And I would disagree with you, Judge Jolly, just to one extent, which is Watson. The touchstone under Watson is assistance. That's what the Supreme Court said in Watson, is we're not looking for compelling . . . assistance can be voluntary. This Court's decision in Winters, the decision to contract with the government to produce Agent Orange is a voluntary decision. The Supreme Court didn't back away from the Soper case in Watson. The Soper case is discussed in Watson, and that was where you had the chauffeur helping the agents. And, you know, the four agents were on the search, and the chauffeur would say . . . the Supreme Court in Soper said the chauffeur had as much of the right to remove as the agents did. Now, ultimately on causation, they lost, but that is where I think the direction does come from the regulations. The control comes from the payment, but the touchstone under Watson is assistance. And so I think to some extent, we're looking as, are you helping? As this Court said in Winters . . . There's no federal regulation that requires you to disseminate these records. I think that's two separate things, Your Honor, I'd respectfully submit. And the one thing I want to make very clear is we are not disseminating records. Someone clicks on that link. There is . . . what plaintiffs allege is there is code on the website. As I understand it, you're making these records available for people like Facebook. It's a click on a link, so there's code on the Internet that you clicked on that link. Now, it's not a . . . I understand it. Facebook could not access these records unless you made it available to them to access. If we did not have the code, I think that it gets very kind of . . . the Internet is based on third-party communication. That's how the thing was set up. The Supreme Court's decision in Reno is cited in our brief. It goes through the Internet. NRA DoubleClick, as cited in our brief, has a great discussion of the Internet. The Internet is based on third-party communication. So the idea that there's some kind of absolute privacy on the Internet is not correct. So we have code on our website. What the code does is it's tied to a device, Your Honor. I really want to . . . your device that you happen to be using, it's not your . . . it's IP addresses. It's cookies that are on your device. So there's a code that causes this transmission to Facebook Pixel. The government uses this. There's a lot of . . . on VA.gov, the government uses this same code. CMS uses this same code, has used this same code in the past. It's an automatic transmission. The federal government . . . there's Google mentioned the complaint. The federal government mandates . . . mandates that federal agencies use Google Analytics on the website because of the analytics that it provides. And the plaintiff's petition talks about how beneficial this . . . these can be in providing analytics, paragraph 80. Could Facebook, for example, access these records without the permission of your client? There's no record. It's a click on a link. Yeah, yeah. If we did not have the source code on our website, could . . . I don't know that Facebook would be able to. That being said, one of the things that the federal government said in the patient engagement playbook is put . . . use this play language, use it on your Facebook page. That is in the . . . that is in our . . . that's 576 of the record in the patient . . . in the government telling us what to do, telling healthcare providers what to do. So they're saying Facebook, use your Facebook page, use this. The Supreme Court's decision . . . I thought using the Facebook page was just asking people to address you all online, not send the stuff to Facebook so they'll know that, oh, I'm coming into the doctor for X and they can send me all kinds of advertisement about X. I mean, that's totally not what you go to a doctor for, to get advertisement from Facebook. Well, and that's where I think, again, you're talking about a public website, Your Honor, and it's different . . . we've been involved in these cases for a little bit and I remember the first case we had was the Facebook like button. You would have the like button on your website and that was the alleged . . . the allegation there was when the like button had that code and it would get transferred and we were, you know, it was a novel claim. We were having some of our associates look at it and research it and the way they felt about it was that they wanted that to happen. That was . . . and I think it's a difference between growing up with . . . I'm assuming you do. Well, I think that's right, but then the question, Your Honor, is who's going to draw those lines? Which court is going to say this was right and this was wrong when in some instances, there's no absolute . . . your internet service provider judge is going to know. AT&T, if you use AT&T for wireless or whatever it might be, your . . . AT&T is going to know you clicked on that same link. If you're on Google Chrome, Google is going to know you clicked on that same link. Microsoft Bing, Microsoft is going to know you clicked on that. Internet Explorer, Microsoft . . . so it's all . . . it's a question of who is going to draw those lines when there's no . . . the one thing . . . go back. I do want to go . . . the assistance. There's no dispute in the record. It's unrebutted that we did this for the federal government. What is the federal directive and by whom that you must make these records available to other people or that you must even maintain these records so as to make them available to other people? The federal directive, Your Honor, is to give people access to that link, to click on that link and . . . And they require you to do that? Require the health agency to do that? I mean the MP . . . what is it? MPR? ONC. LCMC. Yeah. Oh. The federal government does not require LCMC to make this information available. The federal government has asked LCMC . . . Has asked. . . . to make that patient portal and said this is what you have to do to get paid. The federal government has said . . . You have to do this in order to get paid. Provide that link. And that's right. You click on that link. That's the wiretap. Now, when it gets to the Willingham case and where it says if the question . . . and I think what we're talking about is not so much acting under as the causal connection in a lot of ways. And Willingham would say if the question is are you engaged in some kind of plaintiff, that's a question for the federal courts to draw. Now here . . . the last thing I want to say. I know I'm running out of time. But the policy . . . it may be a good policy. It may not be a bad policy to have the access to the health information online. That's what the federal government . . . I don't know what it is. The good . . . the policy is that I think is the good policy that this court recognized in Winters is when someone helps out the federal government in a way that risks the imposition and said . . . General jurisdiction, the whole question is was there a directive by federal office for you to do what you did by maintaining and disseminating these records? You have an answer to that to my satisfaction or do you have? I've missed it. Okay. And then let me go back to this court's opinion in Zerang v. Crane where you say you don't need a precise directive to the conduct alleged. That's under the acting under. You don't need that precise directive. Same thing in Trinity Home Dialysis. It does not need to be a directive with respect to the specific conduct that forms the basis of the complaint. That goes to the causal next. You're saying there need not be a directive. You need not act under the direction of the federal officer to do what you did. There does need to be direction, Judge Jolly, but it doesn't need to be a precise direction with respect to the particular conduct alleged. It just needs to be a   And that's what we have here. Thank you. You saved time for rebuttal, Mr. Kearney. Ms. DePena. Good morning. Barbara DePena for Plaintiff Eppley. May it please the court. As a preliminary matter, I would like to call attention to LCMC's justification for federal jurisdiction that it provided this morning. That the federal government really wanted it to do this. That the federal government asked it to do it. This is not enough. At bottom, instead, this appeal concerns the design of a private business's website. In attempting to bring this dispute under the I think Mr. Kearney was drawing the distinction, at least at the end of his answer to Judge Jolly's question, distinction between a general directive and what he called a precise directive. Yes, Your Honor. I understand that distinction, but I actually would point the court instead to Glenn versus Tyson food. I think that is a much more apt comparison as opposed to the requirements in Watson, which specifies subjection, control, guidance, and that it assists in carrying out a federal duty. I actually would say that this situation is much more like Glenn versus Tyson food. In Glenn versus Tyson food, Tyson alleged that it was a federal officer and it used to support its arguments several promulgations from the president at the time, several pieces of guidance from other federal agencies like I think it's a very similar argument. It said these are directives. We have been directed as a critical piece of infrastructure to keep our poultry processing plants open. This court, when faced with a very similar argument to the argument that LCMC is making today, that it is being faced with federal directives, this court actually said that that is insufficient, that at best, Tyson was being met with strong federal encouragement and that cannot meet the standard for federal officer jurisdiction under Watson or under the tenants of this court. But I mean, here, it seems to me that you have coercion of the federal government at least that we will not pay you money unless you do this and everybody wants money, so they do that. Your Honor, I would say that that does not rise to the level of coercion. My understanding is this is not a situation in which you are not getting paid, that you are getting paid more. So this is not coercion. It's in fact the government incentivizing private actors to do what the government wants them to do. And Your Honor, again, I would point... But he was saying the government says to send everything to Facebook. Is that your position? I apologize, Your Honor. I just want to make sure I understand. To send everything to Facebook? Well, that's basically what he was saying. I thought y'all's argument, you're arguing pretty strongly that y'all don't want what you're discussing with your doctor online to go to Facebook. He's saying that the government wanted that. You don't think that is an issue? Y'all argued about it. We did, yes, Your Honor. And I think that goes to a fundamental disagreement in how each of the parties frames the case. The LCMC is really using this as an opportunity to discuss patient portals themselves. Our position is that we are using this information to collect personal health information and then transmit it to third parties. We completely agree that the federal government should not be doing that. And in fact, the federal government has issued a series of advisory opinions basically cautioning the use and saying that the use of these sort of technologies could be a HIPAA violation, for example. And in addition to that, there are also certain pieces of tracking pixels that track data in a way that does not get into. So your position is even if they're saying you have to do stuff online, that the government did not tell the LCMC to have this pixel that goes to Facebook and we don't, this case isn't about that. It isn't about just being online. It's about being online and throwing it out to all these entities so that if I'm getting, if the doctor is taking care of me for X, I'm going to get a bunch of advertising about X. Correct. We sort of framed this as an argument in the alternative. So we said our original position is that no, the government has not instructed these hospital systems to use this sort of technology. But even accepting LCMC's framework that patient portal, that this is really an issue about the installation of patient portals, we also maintain that the government didn't instruct the hospitals to do that as well. I did want to spend a little bit of time because I noticed that in LCMC's case, there was a lot of focus on the subjection, guidance, or control. But I also wanted to highlight a piece that LCMC omitted, which is that there must be beyond simple compliance and there must involve an effort to assist or to help carry out the federal superior's duties or tasks. This court has affirmed that approach, finding federal jurisdiction, for example, in a case that LCMC referenced in Trinity Home Dialysis, Inc. versus WellMed Networks, where WellMed assisted the Center for Medicare and Medicaid Services in administering, excuse me, benefits on behalf of the federal government. And crucially, it was subject to extensive, detailed regulation, monitoring, and supervision by the federal court, excuse me, the federal government in carrying out these duties. Which case was that? Your Honor, that was Trinity Home Dialysis, Inc. versus WellMed Networks. So that oversight and that delegation, both of those two key components are absent here. So first, as an initial matter, LCMC controls its own website and its own patient portal. It doesn't have to ask the government for any sort of guidance. LCMC critically has cited no specific means through which the government has exercised guidance. The question here is whether they are acting under the directive of the federal government. And if the federal government is offering incentives or punishment, if they don't act like the federal government wants them to act, does that satisfy the requirement for even if that directive is subtle in the form of granting or withholding payment? Your Honor, I don't think that the incentive and the punishment in and of itself would get us to federal officer jurisdiction. And I think that really goes to the component that is particularly missing in this case that Watson requires, which you need more than simple compliance. And in this case, which it's missing in this case, you also need to carry out or assist something that the government would otherwise have to do itself. So for example, we see that in Trinity Homes Dialysis. WellMed, a subcontractor, is helping CMS carry out and administer Medicaid benefits. If WellMed wasn't doing that, CMS would have had to do it itself. We see that, for example, in Zerenge, which is also another case coming out after this court, where if Crane had not built the certain things that it needed to build, the Navy would have had to build those things itself. So to answer your question, Your Honor, incentive payment or withholding would not be enough. And it would not be enough under these facts. And if we should say that to establish federal jurisdiction, federal officer jurisdiction, it would be on grounds that have never been addressed before. Would that be correct? I would say that that would be an additional point, in addition to the fact that this is merely complying. Our position is that this is merely complying with federal regulation. So this doesn't wade into any sort of punishment. But if we said, even if we concluded it was coercion, that does not change the position that you are taking. That is correct. I would like to highlight that we do not take that position, but we would need to have that sort of, it would need to be something that is done before. So, for example, in this case, the United States has never had a national health care system. And that's very different from the cases. So, for example, Winters, which LCMC highlighted, which was the federal government contracting a subcontractor to create Agent Orange. Otherwise, the federal government would have had to do that itself. And I think in this particular case, it is important to note that the regulations, the guidance that LCMC is focusing on, it merely encourages hospitals to migrate from state court to federal court. And that is the only way that the federal government would be able to do that. Your Honor, I couldn't have said it better myself. That's correct. That is our position. We believe that finding federal officer jurisdiction under these facts would just not be fair. Pardon? The fact that no other court has sustained the plaintiff's position in this case other circuits. That is, I apologize, Your Honor, for interrupting. But yes, that is correct. At this point in time, the Third Circuit, the Eighth Circuit have both ruled on this issue and found that it does not confer federal officer jurisdiction. It has been confirming the findings of almost 30 district courts, I believe, finding that there is no federal jurisdiction in this case. I'm just saying it's another reason to rule for you that we create a circuit conflict if we ruled in favor of the plaintiff in this case. That is correct, Your Honor. So really what we have here is mere government interest, government desire, and government encouragement. In this situation, as the court has pointed out, the federal government would not be obligated to digitize and make available patient health records for LMC's patients if it did not. To be clear, in operating the patient portal, in placing the tracking pixels on its website, LCMC is not doing the government's business. It is doing its own. Is it getting paid for doing that from Facebook? It is not getting paid by Facebook. Essentially what happens is LCMC permits Facebook or other tracking companies to install basically these snippets of code into its website. Why does it do that? Well, so in exchange for allowing them to put in that snippet of code, LCMC receives certain data analytics. So information about engagement, information about which posts are being seen by which groups of people. Again, I'm not attacking Facebook on this. They should take what they can get as long as it's legal. I'm just questioning when you're with a doctor, that tends to be very, very confidential in my experience, but maybe I'm not on the Internet enough. Yes. That is in effect our position that regardless of whether the Internet is a public forum or not, we would not expect that our doctors would share our confidential personal health information. And that is in fact what is happening in this case. A lot of time has been spent on the acting under prong, but I wanted to briefly address the remaining two prongs, which is the connection or association, and then finally the colorable federal defenses. So I very quickly wanted to note that in its briefing, particularly its reply briefing, LCMC is attempting to collapse the acting under inquiry and then the causal connection and association inquiry. And I did want to note that LCMC must show that it is acting under, and it is insufficient to merely point out that there is some sort of connection, however attenuated, between either the tracking pixels or the patient portals and our claims in this case. You're reminding us that the test is conjunctive, so all four prongs have to be met. Yes. And then finally, Your Honor, on that same vein of meeting all four prongs, the last prong is that LCMC must raise a colorable federal defense. And to be colorable, it must be plausible. LCMC has raised two defenses. The first is a general broad First Amendment defense. It has sort of misconstrued our claims in this case. Our claims are that the tracking pixels, LCMC should not have installed these tracking pixels that harvested personal data and then transmitted them to third parties. They are essentially trying to contort this into more of like a what can and cannot be transmitted on the Internet. There is nothing in their cases or in their reply brief that supports any sort of finding that there is a right to transmit sensitive personal information. For example, they cite to Sorrel or Sorrel. I must confess I don't know the pronunciation. In that case, the Supreme Court struck down Vermont's prescription confidentiality law, which required dissemination of individual doctors' private prescribing practices. That has nothing to do with the kind of personal private information that we have here. And then finally, as its second defense, LCMC raises a general broad preemption defense. But even in its briefing, it really doesn't address our main argument, which is that it has brought forth no evidence indicating that Congress, with the HITECH Act or the Meaningful Use Program, intends to occupy the field or preempt state unjust enrichment and wiretapping claims. And unless there are any further questions, we will rely on our rebuttal. Thank you, Judge. Judge Daly, Zering v. Crane, 846 F. 3rd, 785 at 792. Direct oversight of the specific acts that give rise to a plaintiff's complaint is not required to satisfy this part of the action under requirement. Trinity Home dialysis is another case that was discussed. This is 2023 Westlaw 2573914. At 3, we construe the acting requirement under requirement broadly. Accordingly, WellMed does not need to prove that its conduct was precisely dictated by On this First Amendment defense, I mean, you're a lawyer. If I were your client and I told you something confidential and you put it online and told everybody what I said, would you have a First Amendment right to have done that when I sue you? Okay. So there is confidentiality out there in the world that is not inconsistent with the notion of First Amendment. When we go back and confer about this case, I can't go online and say what my colleagues said about the case. So I don't have a First Amendment right to do that. And you're going back in a room, Your Honor. And you're going back. And what anybody says to a LCMC physician in a patient's room, certainly there's no First Amendment right. What we're talking about here, there's guidance. Mr. Payne, you mentioned guidance. That guidance came out in December 1, 2022, Your Honor. Before that, there was no guidance. The Ninth Circuit in Smith v. Facebook, that first case, the Ninth Circuit said this information did not fall within HIPAA, was not protected health information under HIPAA. Your Honor, what we're talking about is I go online last night. Let's say my son has a stomach ache. I go online last night to look at a stomach ache, go to LCMC's website and look for a stomach ache about my son's condition. What is getting transferred to Facebook is my IP address from my hotel here and information about my device. That's what we're talking about. And that's where you're talking about if the court looks at the type of information and the balancing of privacy interests, that's what the First Amendment requires. And Packingham, Facebook has one point . . . this is the Supreme Court analyzing the First Amendment issues with respect to Facebook in particular. Facebook has 1.79 billion users. That is how speech occurs today, social media. I don't get it either in a lot of ways. I can tell you I have a 15-year-old and a 13-year-old and they get it and they understand. That's the way . . . that's where the First Amendment I think comes into it and that's where it's all of these issues of, okay, what's right and what's wrong? On December 1st, 2022, the federal government said, okay, this is going to go this way. We're not . . . the one thing, Judge Haynes, to your point on what goes on in the conference, this case isn't about what goes on in the portal. There's no allegation that what goes on in the portal is any way disclosed to Facebook once you get into that password protected. What is alleged is clicking the link and the link is publicly available on our website. Anyone can access that link at any time, just like the other health information available on our website. So this is where the First Amendment . . . it's not anything when you're in a room that is getting . . . it's the public website when you're clicking that link. And that link . . . No, I was just addressing the First Amendment defense. I don't know if the founders really were online a lot. I don't think they were. I don't think they were, but I think that it always goes to . . . I don't know how much about living and breathing Constitution . . . And I'm not saying . . . please understand, I'm not saying that using the internet doesn't have anything to do with the First Amendment. I'm just not understanding how that's a defense in this case. I think if you look at Judge Paragraph 80 of their petition, Paragraph 78, Paragraph . . . this is an analytical tool. You advertise on Facebook, you put this code, you can see how well those ads are working. The government in the AHA litigation . . . the AHA is now American Hospital Association is challenging the constitutionality of the guidance. The government has admitted this is commercial speech under Central Hutchins. So . . . Thank you, Mr. Kearney. Thank you, Your Honors. On behalf of LCMC, I thank the Court for its time. Your case and both of today's cases are under submission, and the Court is in recess until